E-FILED
Monday, 27 January, 2020 04:15:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SEAN WRIGHT,<br>   Plaintiff, | )<br>)<br>) |
| vs. | )     No. 19-3277<br>) |
| DR. FRANCIS KAYIRA, et. al.,<br>   Defendants | )<br>) |

MERIT REVIEW ORDER

This cause is before the Court for merit review of the Plaintiff's complaint. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff, a *pro se* prisoner, claims Dr. Francis Kayira, Physician's Assistant (PA) Tim Adesanya, Health Care Unit (HCU) Administrator Stefanie Howard, Warden Craig Foster, and Wexford Health Sources violated his constitutional rights at Graham Correctional Center.

Plaintiff injured his left ankle while he was on the recreation yard on August 7, 2017. Plaintiff was in excruciating pain and his ankle began to swell. He was taken to HCU where a nurse gave Plaintiff a wrap for his ankle and told Plaintiff to ice it.

Plaintiff saw Nurse Hill during sick call on August 10, 2017 who referred Plaintiff to PA Adesanya and said Plaintiff needed an x-ray. The next day Plaintiff met

1

with the PA who wanted to know why Plaintiff had not yet received an x-ray. The Defendant then blamed Plaintiff for not keeping ice on his ankle even though Plaintiff explained his unit did not have an ice machine. Plaintiff was advised not to put any weight on his ankle.

Plaintiff was called back for an x-ray on August 14, 2017. The next day Plaintiff filed a grievance since he still had not received any treatment for his ankle.

PA Adesanya met with Plaintiff on August 25, 2017 and informed Plaintiff he did not have his x-ray results. When Plaintiff asked to see Dr. Kayira, Plaintiff was told if the doctor wanted to see Plaintiff, he would be called to HCU.

Plaintiff continued in pain and had to walk on his injured ankle when going to the chow hall. Plaintiff informed Warden Foster and HCU Administrator Howard he was still suffering in excruciating pain with no medical care, but no one took any action.

Finally, on August 31, 2017, PA Adesanya told Plaintiff his x-rays showed "abnormalities," but the Defendant refused to answer any further questions about the results.

Plaintiff was sent to see a surgeon on September 6, 2017 who ordered another x-ray. Dr. Yossef El-Bitar told Plaintiff he had "been walking on a multi-fractured ankle" for a month, and the surgeon would have to re-break the ankle in order to set it correctly. (Comp., p.7). The surgeon said since Plaintiff's ankle was not set within the first 24 to 48 hours, Plaintiff had suffered greater injury to tendons, ligaments, and soft tissue. Plaintiff was issued an immobilizing boot to wear until he received a CT scan and surgery was scheduled.

Surgery was ultimately performed on September 26, 2017 and Plaintiff remained in the hospital overnight. Plaintiff claims his dressing was not changed until he returned for a follow-up visit with Dr. El-Bitar on October 9, 2017. The surgeon ordered physical therapy (PT) for Plaintiff to regain some strength and mobility.

Plaintiff says he did receive a PT evaluation, but he has not received any specialized therapy. Instead, nurses tell Plaintiff to do his exercises in a room by himself, and then record that he has received PT.

Plaintiff says the delay in medical care caused unnecessary pain and greater injury. Each Defendant was aware of Plaintiff's reported injury and pain, but did nothing to ensure that he received prompt care. In addition, Wexford Health Sources has a practice of delaying medical care for serious injuries. Plaintiff has clearly articulated a violation of his Eighth Amendment rights based on deliberately indifference to a serious medical condition. Plaintiff claims Defendants denied and delayed medical care for his ankle, and denied prescribed PT for his ankle.

Plaintiff claims he completed the grievance process and directs the Court to the attached reply from the Administrative Review Board (ARB). However, the ARB says it received Plaintiff's complaint on December 4, 2017, and Plaintiff was grieving events which occurred in August of 2017. (Comp, p. 5). Therefore, the ARB found Plaintiff's complaint was untimely.

It is unclear if Plaintiff successfully exhausted his administrative remedies before he filed his complaint. It is also unclear whether Plaintiff's claims are barred by the statute of limitations period since he did not file his complaint until December 2, 2019.

3

[1]; *See Farrell v. McDonough*, 966 F.2d 279, 280-82 (7th Cir. 1992) (lawsuit must be filed within two years of claim); *Hatch v. Briley*, 230 Fed.Appx. 598, 599 (7th Cir. 2007)(statute of limitations clock begins when claim accrues, stops during grievance procedure, and restarts when procedure is complete). However, the Court notes the denial of PT appears to have extended into 2018. In addition, if the Defendants choose to file a motion for summary judgement on either issue, they will need to address whether Plaintiff has alleged a continuing violation. *See Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013)("continuing-violation doctrine operates to *delay* the start of the limitations period.")(emphasis in original); *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue.. if the objectionable condition is continuing.").

Plaintiff has also filed a motion for appointment of counsel. [5]. Plaintiff has no constitutional right to the appointment of counsel. In addition, the Court cannot require an attorney to accept pro bono appointment in a civil case. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992).

In considering Plaintiff's motion, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).

4

In this case, Plaintiff has demonstrated at least some attempt to find counsel on his own. However, at this point in the litigation, Plaintiff appears capable to represent himself. Plaintiff's complaint clearly and articulately sets forth his intended claims. During discovery, Plaintiff will be able to obtain any relevant medical records. In addition, Plaintiff should also be able to testify personally to the pain he experienced, his attempts to obtain help, and the responses he received. All of this information can be used to demonstrate deliberate indifference. *See Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997)(expert testimony not necessarily required to establish deliberate indifference). Finally, the Court will enter a scheduling order in this case after Defendants file their answer which provides information to assist a *pro se* litigant, and requires the exchange of initial, relevant discovery including medical records. Therefore, Plaintiff's motion is denied. [5]

IT IS THEREFORE ORDERED:

> 1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges Dr. Francis Kayira, Physician's Assistant Tim Adesanya, Health Care Unit Administrator Stefanie Howard, Warden Craig Foster, and Wexford Health Sources violated his constitutional rights at Graham Correctional Center when they were deliberately indifferent to his serious medical condition. Plaintiff alleges the Defendants delayed or denied medical care for a broken ankle from October of 2017 through at least December of 2017 and denied prescribed physical therapy. The claims are stated against the

individual Defendants in their individual capacities and against Wexford in its official capacity. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained

only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Deny Plaintiff's motion for appointment of counsel, [5]; 2) Attempt service on Defendants pursuant to the standard procedures; 3) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 4) enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 27th day of January, 2020.

s/James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE